James O. Shackelford, J.,
delivered tbe- opinion of tbe Court.
Tbis is a bill filed in tbe Chancery Court at Memphis, by tbe complainants, against tbe defendants, Eurgerson and Neil, and Finly Means, attaching the property of Furgerson and Neil, and asking tbe construction of a deed, etc. It appears from tbe record, Littleton Henderson, on tbe 29th of May, 1843, for love and- affection, conveyed to his son-in-law, Thos. B. Means, and bis daughter, Rachel, tbe wife of Thos. B. Means, several tracts of land in fee simple. In the said deed, be also conveyed to his daughter, Rachel, a lot in the City of Memphis. After describing the lot, the deed recites: “which said lot, I hereby give, grant and convey, to the said Rachel Means, and to her heirs, the natural issue of her body, forever; if there should be no issue, then the said lot or parcel of ground, to descend to my grand-children. Nevertheless, the full and complete life estate, is hereby given and established in her present husband, or future husband, whether there be offspring or not; and her husband or husbands, as the case may be, shall continue in possession of the same, and have, own, and possess all the rents, rights or emoluments appertaining to or arising therefrom, during their natural lives, and *481 not until their death shall the reversionary interest commence.
On the 24th of February, 1851, Thos. B. Means and wife, by deed properly executed, sold and conveyed this lot to John H. Reynolds.
On the 7th July, 1854, Reynolds sold and conveyed by deed, to Joseph Furgerson and Jas. H. Neil. On the 14th of November, 1854, Furgerson and Niel sold the lot to Edward and John Kirk, for $6,500, one thousand dollars paid in cash, balance on time, for which the notes of the purchaser were executed, and a bond for title was given upon payment of purchase money, with usual covenants of warranty, etc.
On the 20th of September, 1858, the complainants filed this bill on the Chancery side of the Common Law and Chancery Court of Memphis, against Furgerson and Neil, in which they aver the defendants have failed and are insolvent; that they only had a life estate in the lot purchased by them; that they have already paid more than the value of the interest; that the remainder interest in the lot was in Finly Means, the son of Thomas and Rachel Means. An attachment was prayed for against the estate of Furgerson and Neil; process was issued, and the cause was brought to a hearing.
The Chancellor was of opinion that Furgerson and Neil were only possessed of the life estate of Thomas B. and Rachel Means — the remainder interest being in Finly Means, the child of Rachel Means — and decreed an account to be taken of the value of that interest. The funds attached were subjected to the payment of *482 complainant’s' claim. The canse was brought to this Court by appeal; and at a former term, the Court being of opinion that Pinly Means, the child of Rachel Means, was a necessary party, remanded the cause, with instructions to make him a party. This was done. The answer of Einly Means, was filed, inNyhich he sets up his title, &nd avers the remainder interest in the lot, upon his mother’s death, vested in him, subject to the life estate of his father. The • cause was again heard, and the Court was of opinion that the deed of Littleton Henderson to Rachel Means, only vested in her a life estate, and re-affirmed the decree pronounced at the former term. From which decree, Furgerson and Neil appealed to this Court.
The only question presented for our consideration, arises upon the construction of the deed of Littleton Henderson to his daughter, Rachel Means, made in 1843. It appears from the deed, he gave the lot in suit to Rachel Means and to her heirs, the natural issue of her body; and in the event of the failure of issue, to his grandchildren. This was a remainder over upon an indefinite failure of issue. Such was the evident intention of the grantor.
What is the legal effect of this, deed? Hid the absolute estate vest in the donee, Rachel Means, subject to the life estate of her husband? For the proper determination of this question, it becomes necessary to look to the rules of the common law, controlling such deeds.
By the common law, an estate to a man and his “heirs,” in land, gave him an estate in fee. The word *483 “heirs,” is necessary in the grant or deed, in order to make a fee or inheritance. If land be given to a man forever, or to him and his assigns forever, this gives him but an estate for life. Mr. Blackstone says, that this is plainly a relic of feudal strictness. A • conditional fee at common law, was a fee restrained to some particular heirs, exclusive of others. As to the heirs of a man’s body, by which only his lineal descendants were admitted in exclusion of' collateral heirs, or* to the heirs, male, of his body, in exclusion of both collaterals and lineal females, alsó. With regard to the condition annexed to these fees, by the common law, Mr. Blackstone says: “our ancestors held snch a gift to a man and the' heirs of his body, was a gift upon condition that the estate should revert to the donor, if the donee had no heirs of his body.” Thus the common law stood, until the passage of the statute commonly called the statute De Donis Conditionalibus, in the reign of Edward I. Upon the construction' of this Act of Parliament, the Judges determined, the donee had no longer a conditional fee simple, which became absolute and at his own disposal the instant any issue was born. They divided the estate into two parts, leaving the donee a particular estate, which they denominated a fee tail: 2 Blackstone’s Com., 113. Estates tail are either general or special. Estate tail general, is where land is given to one and the heirs of his body begotten. As the word “heirs” is necessary to create a fee, so in further limitation of the strictness of the feudal donation, the word body, or other words of procreation, are necessary to make it an entail.
*484 The deed gives an estate for life to Thomas B. Means, with a vested remainder to Rachel Means, and to her heirs, the natural issue of her body, forever. The estate in remainder, is an entail at common law, because words of procreation are added to the word heirs: 4 Kent, 11, 13.
Apply these principles of the common law to the case under consideration. The gift was to Rachel Means and to her heirs, the natural issue of her body, forever. This limitation at common law, created an estate tail. By the provisions of the Act of 1784, chap. 22, sec. 5, estates tail were abolished; and, in the language of the statute, they shall be deemed and held a fee simple absolute. What is the legal effect of the limitation to the grandchildren, in the event the grantee shall die without issue? If an executory devise be limited to take effect after a dying without heirs, or without issue, or on a failure of issue, the limitation is held void, because the contingency is too remote, as it is not to take effect until there is an indefinite failure of issue: 4 Kent, 271.
This Court held, in the case of Randolph vs. Wendel, 4 Sneed, 646, a dying without heirs, or heirs of the body, is construed by the common law, like dying without issue, to be too remote an event upon which to suspend a limitation. The reason of the rule is, that a limitation to take effect upon an indefinite failure of issue of a person who takes the absolute property, is void, because it violates the rule against perpetuities. It follows, therefore, the limitations to the grandchildren in this deed, depending upon an indefinite failure *485 of issue, are void. The result is, the absolute title to the lot iu question vested in Rachel Means, subject to the life estate of her husband, which was carved out of the absolute estate.
The donor, Littleton Henderson, having, by his deed to Rachel Means, in 1843, attempted to create, and did create, an estate tail; by the provision of the Act of 1784, the estate thus attempted to be created, became an estate in fee simple, vesting the absolute estate in Rachel Means and her heirs; and she and her husband, having, by deed, in 1851, conveyed the lot in suit to Reynolds, the absolute title to the lot passed and vested in that vendee, who, by deed conveyed to Furgerson and Neil, who had thereby, the absolute title to the property, and could make a good and sufficient title in fee simple. Finly Means, the child of Rachel Means, takes no interest; the title to the property having been passed by the deed of Thomas B. Means and wife, Rachel, made in 1851.
It follows, the bill of complainants must be dismissed; but, inasmuch as attachments were issued, and the property of Furgerson and Neil was attached, and it does not appear what disposition was made of the funds attached, the cause will be remanded, that proper orders may be 'made. The complainants will pay all the costs in the cause.